All right, case number six for today is Scott Retzloff v. Colvin, another Social Security case. Mr. Lein. Thank you, Your Honor. Good morning, Justices. My name is Curtis Lein. I'm from Hayward, Wisconsin. I represent Mr. Scott Retzloff in this Social Security matter. In evaluating the evidence, it seems to me the crux of the case comes down to the limitations that were adopted by the judge in this case. The crux of it is that the judge adopted certain things, and I'll go into some of the detail in a minute, but he adopted non-exertional factors for consideration at an occasional level for things like stooping, squatting, and standing. Whereas Dr. Florin, the treating physician, opined that these things were actually on a rare basis. Now, where that becomes a critical part of the case is the fact that in the sequential evaluation of the materials that were held at the hearing, the V.E. testified that if you have the restrictions of occasional on these non-exertional factors, then there is work in the national economy. Whereas if you adopt the things that are rare, meaning he could rarely bend, squat, and climb type of thing, then in fact there are no jobs in the national economy for Mr. Retzloff. So that becomes what I think is the cruxical issue in deciding whether Mr. Retzloff gets benefits or doesn't. Everybody agreed medically that Mr. Retzloff was able to lift up to 20 pounds lifting. Where the difference comes in is when you start getting these non-exertional factors and deciding which factors to accept. Our position was that Dr. Florin, who was a psychiatrist at the Mayo Clinic, been there for 30 years, got a great deal of experience, opined that there was in fact this limitation of rare. When that was proposed, the vocational expert, Mr. Mastbaum, he agreed with me that there were no jobs in the national economy. In the decision that came out, the judge decided he only wanted to have occasional restrictions on those factors. So what are you focusing on as the key non-exertional factors that show that he's unable to work? Right. In the ALJ's opinion, for example, he states on July 10th, Dr. Florin opined claimant would be limited to lifting 20 pounds, rare bending, occasional kneeling, squatting, crouching, twisting, climbing, etc. And he goes on to say on August 10th, 2010, Dr. Florin opined claimant could return to work at the light level, again 20 pound lifting, with standing, walking, limited 20 minutes of every hour, sitting 3-5 hours, driving 3-5 hours, and rare bending, squatting, and climbing. And when you go to a rare versus an occasional, I think you're in a position where there is no work for you in the national economy. Well, the ALJ looks at these opinions, thinks that he can perform light work, doesn't think that Retzeloff has tried to work very much since this accident, and looks at a vocational expert and concludes that there are jobs. So I guess I want to know why that's so inconsistent with the medical evidence and the other evidence in the record that we should find that's not supported by substantial evidence. Well, best I can say, Judge, is that we're relying on the experience of Dr. Florin. But he's not the only doctor in the record, that's the problem. I'm not going to criticize Dr. Florin per se, but doctors have differing views of these things, and Mr. Retzeloff's behavior itself, he goes for long periods of time without seeing anybody, he relies on over-the-counter medicines, not prescription things. He doesn't seem consistently to show the picture of somebody who can't work. I would agree. On that point of what doctors have seen him, there was a treating physician early on, a Dr. Brent Kelly from one of the clinics in Hayward, that saw him until December of 2010. He just didn't feel he had the expertise, so he referred him to Dr. Florin. After he left the male clinic, the psychiatry department down at the male clinic in Eau Claire, Dr. Florin becomes his treating physician. There's one consult with Dr. Perez, the surgeon, that didn't go anywhere, so he's back with Dr. Florin. I think it's fair characterization to say that Dr. Florin essentially created the record over the critical part time. He should, therefore, be given some deference by the fact that he's seen him on an ongoing, regular basis. There are flaws in the ointment. Mr. Retzeloff has a view. Dr. Florin changes his mind over time without pinning that very well to observable medical changes. You know, I would agree on that. I think the medical is what the medical is, but there again, it goes back to the fact that he's got a tremendous amount of experience and expertise in this area. I think it's fair to say that I think he's got a good longitudinal reason for wanting to do and change his opinion. I can't point to a new hernia disc, and I can't point to a pinched nerve after the fact. That's clearly in there, but I'm laying my hopes on the fact that Dr. Florin's analysis should be accepted here. Okay. All right, thank you very much. You'll have some rebuttal time. Mr. Levitt. Good morning. David Levitt on behalf of the Commissioner. May it please the Court. The ALJ here was tasked with weighing the multiple opinions of Dr. Florin. That was his role, as well as weighing the other medical opinions. So following the regulations, the ALJ gave substantial weight to Dr. Florin's opinions through April 2010, but less weight to those opinions after that time. Now, some important factors under the regulations for weighing medical opinions are supportability by the evidence and consistency with the evidence. Here, Dr. Florin significantly changed his opinions after April 2010 without much support in the medical evidence. Imaging showed mild and degenerative changes before April 2010. Imaging showed mild and degenerative changes after April 2010. The exam findings were similar before April 2010. They were similar after April 2010. So faced with this record, the ALJ did the reasonable thing. He gave substantial weight to Dr. Florin's opinions prior to or through April 2010, and less weight after. Now, the ALJ was aware that Dr. Florin was a specialist in occupational medicine. He noted that fact. The ALJ was aware that Dr. Florin was a treating physician. He noted that fact as well. And the ALJ was aware that Dr. Florin had examined Mr. Retzlaff. The ALJ noted all of those factors. He considered all of those factors. Now, ordinarily, those factors might have gone to giving Dr. Florin's opinions in their totality greater weight. However, again, faced with the evidentiary deficit explaining why Dr. Florin shifted his opinions quite greatly after April 2010, the ALJ did not give great weight to Dr. Florin's opinions in their entirety. And there's what, something like a 16-month gap between the last time Dr. Florin saw the plaintiff and the time that he filed his statement with the agency about complete disability? Your Honor, I'm not sure if it's that long. There was a long gap between his June, I believe it was June or September 2010 time that Dr. Florin saw Mr. Retzlaff and then some times that he saw him in April 2012. And during that time, Mr. Retzlaff did get treatment for other things besides his back, and physicians noted normal gaits. But yes, and then in 2012. Treatment from other physicians. From other physicians, Your Honor, yes. But there is, again, in 2000, I believe it's either in the end of 2012 or the beginning of 2013, Dr. Florin opined in a workman's compensation report that Mr. Retzlaff could not perform any work and he had not seen Mr. Retzlaff in a period of time before doing that. And had not said that on the occasion of the last time he saw Mr. Retzlaff. Right, was that the first time he said he's not able to do any work? Your Honor, I have to admit that Dr. Florin did see Mr. Retzlaff on an occasion where he did opine in 2012 that he couldn't do any work. So, you know, you could say maybe he realized that he'd been too optimistic before, you know, that the same set of underlying medical conditions, which certainly could lead to the kinds of problems Mr. Retzlaff is complaining about, had in fact had a bigger impact than he realized. Well, perhaps one could say that, but right now we're looking at whether the ALJ's findings are reasonable. And if you look at the medical evidence in terms of the imaging and the exam findings, it wouldn't really support much of a change in Dr. Florin's opinion. I think that's what the ALJ was getting to. So the ALJ is primarily relying on the consulting physicians, people who did not see Mr. Retzlaff? Well, that is one of the factors that the ALJ is relying on, and the ALJ, again, is also relying on Dr. Florin's opinions through April 2010, as the evidence doesn't change very much after April 2010. I believe the central issue here is it's unclear to the ALJ why Dr. Florin changed his opinion. Did the ALJ ever try to follow up on that? Well, it's at the ALJ's discretion whether to follow up on a treating physician here or any physician opinion. Here there's ample evidence from Dr. Florin's notes. But Dr. Florin's notes, you just finished saying that Dr. Florin's notes don't say, I realize this is a more pessimistic assessment than I've made before, but here's why, da-da-da-da-da. I mean, that's not there. Exactly, Your Honor. There's no explanation. But the ALJ never asks, either to say, gee, you know, what caused the C change? Well, I think looking at the evidence, it would seem as though there was no real reason other than maybe Mr. Retzlaff. Well, that's what the ALJ assumes, but I'm just saying it would be for this man, you know, apparently. Perhaps, although the one factor that may change is that Mr. Retzlaff does continue to report pain. He continues to report that he can't find any jobs. He can't find any light jobs. There are notes about... Doesn't his self-report of the pain indicate that it gets worse, it covers more areas, it goes down his leg and different things? Well, that's his self-report, but it's not backed up by the other evidence. Of course, as you well know, self-reports of pain have to be taken seriously as well by ALJs. Yes, Your Honor, and I believe the ALJ did consider the self-reports, but in the absence of other evidence in supporting those self-reports, I don't think that you can rely on a... that's a good basis to rely on a treating physician opinion. This Court has cautioned or this Court has held that ALJs need not rely on a physician opinion that's based upon subjective reports. Right, although they do have to take the subjective reports into account because otherwise, you know, you would never grant relief to people with fibromyalgia or, you know, other... a whole variety of things that are actually hard to pin down in a physical sense. Yes, Your Honor, I think here the ALJ did consider the subjective reports immediately prior to looking at Dr. Florin's opinion, and this isn't a case of fibromyalgia or some sort of... where the cause of the pain is unclear. This is a fairly common case of a back injury. Mr. Retzlaff fell off a truck and hurt his back, and the ALJ is acknowledging that he can only perform light work and he has postural limitations and that he is in pain. It's just the question is, is he is in much pain as Dr. Florin indicates after April 2010. Okay. So if there are no further questions, then I respectfully ask the Court to affirm the ALJ's decision. All right, thank you. Anything further, Mr. Lein? Just a few quick comments. In terms of the evidence that's there and opinion evidence, the DDS people did their evaluation and said 20-pound lifting just like Dr. Florin did, but what they didn't really do was go into the non-exertional type of restrictions, stooping to bend his spine. That's where Dr. Florin's opinion becomes so critically important because he does talk about those things. After a while, he gets to his final opinion, recognizing that Scott, in his opinion, has very extreme limitations on these non-exertional factors. I think it's important to recognize also that there was that gap in treatment. I think it was actually 18 months, to be honest. But he does go back to see Dr. Florin. He reports that he's got increasing pain and he's got problems, so he goes back to the specialist that supposedly could help him. I think that's significant. And then in two different places in the record, Dr. Florin fills out a workability report. That's typical in a lot of these clinics and things. It says can he return to work, what was the cause of it type of thing. He takes him off of work. Now, I understand, of course, the legal aspect of it is the commissioner should decide whether he can go back to work or not. That's the ultimate conclusion. But I think really what he's saying by taking him off of work is physically, having known the man, knowing his history, looking at everything that's there, he just can't physically do things anymore. And so I think that becomes significant because that reinforces those severe, rare non-exertional restrictions. Thank you. All right. Thank you very much. Thanks as well to Mr. Levitt. We'll take the case under advisement.